The FIRST NATIONAL BANK AND TRUST COMPANY OF BISMARCK, Bismarck, North Dakota, a National Banking Corporation, Plaintiff and Appellant,

v.

R. M. HART, Defendant and Appellee.

Civ. No. 9438.

Supreme Court of North Dakota.

June 30, 1978.

Rehearing Denied July 17, 1978.

Pearce, Anderson, Thames & Durick, Bismarck, for plaintiff and appellant; argued by Patrick W. Durick, Bismarck.

Frederick Edward Saefke, Jr., Bismarck, for defendant and appellee.

PEDERSON, Justice.

In January 1972, Robert B. Hart sought a loan of $35,000 for 90 days at 8% interest from The First National Bank and Trust Company of Bismarck. The bank was unwilling to lend on the credit of Robert, so his father, R. M. Hart, was asked to sign the note as a comaker, or to endorse it. He refused to do either, but did sign a guaranty instrument and the loan was made.

Over the course of the next several years, eight new notes were issued sequentially, always for the same amount but for varying periods of time and, eventually, at an interest rate of 9%. Though the record is not clear, it is apparent that each earlier note was destroyed or endorsed paid contemporaneously with the issuance of a new note. It appears further that, while R. M. Hart may have had informal notice of these transactions, neither the bank nor Robert provided him with any formal notice. On September 13, 1975, a 180-day, 9% note was due and went unpaid. There was no reissue and payment of the note was sought from R. M. Hart. He refused to pay and a lawsuit was brought. After trial without a jury, the district court dismissed the bank's claim. The bank appealed the dismissal to this Court. We reverse.

### I.

R. M. Hart claims that he did not read the guaranty instrument. He testified that all the discussion when the initial note and guaranty were signed involved a 90-day, 8% note. He says he assumed that the guaranty was only to apply to that note, for that time period, and for that rate of interest. A reading of the guaranty instrument reveals that R. M. Hart guaranteed much more than the initial note. The guaranty states, in pertinent part, that R. M. Hart will:

" . . . unconditionally guarantee the prompt payment when due . . . of any and all notes, drafts, checks, and all other indebtedness . . . due or to become due . . . now existing or hereafter arising . . . at any time owed or contracted by the Debtor [Robert B. Hart] to the Bank . . . provided, however, that the limit of liability hereon shall not exceed . . . $35,000 . . . ..

"This guaranty is an absolute and completed one and shall be a continuing one and no notice of any indebtedness already or hereafter contracted or acquired by the Bank, or of any renewal or extension of any thereof need be given to the undersigned . . . .."

R. M. Hart presents the novel argument that, because he did not read it and because he was not given a copy of the guaranty, he was entitled to rely on his recollection of the oral agreement, and therefore should not be bound by the terms of the signed guaranty contract.

"This Court cannot interpret the words of a contract for one who has read the words differently than for one who has not read them." *Mills v. Agrichemical Aviation, Inc.,* 250 N.W.2d 663, 668 (N.D. 1977).

"The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument." Section 9–06–07, NDCC.

"Parol testimony is inadmissible to vary the terms of a complete and unambiguous contract." *Smith v. Michael Kurtz Construction Company,* 232 N.W.2d 35, 36 (N.D.1975), syllabus 4.

### II.

The district court, in dismissing the bank's complaint, made the following findings of fact:

"5. That the provisions of the 'guaranty' agreement, prepared by the plaintiff [bank], are excessively broad, vague and ambiguous;

"7. That the provisions of Section 22–01–15 NDCC apply to this form of proceeding and as construed by the Supreme Court of the State of North Dakota in

*AMF, Inc. v. Fredericks,* 212 N.W.2d 834."

We determine that these are properly conclusions of law, or mixed questions of fact and law, rather than findings of fact. When the question is more a question of law than of fact, our review is not restricted by Rule 52(a), NDRCivP. *Dolajak v. State Auto. & Cas. Underwriters,* 252 N.W.2d 180 (N.D.1977). See, also, *Backar v. Western States Producing Co.,* 547 F.2d 876 (5th Cir. 1977). The true nature of a finding of fact or of a conclusion of law does not depend upon the label attached. *Bottineau Public Sch. Dist. # 1 v. Currie,* 259 N.W.2d 650 (N.D.1977); *Bladow v. Bladow,* 249 N.W.2d 917 (N.D.1977). Conclusions of law are fully reviewable by this Court. Rule 52(a), NDRCivP; *Gajewski v. Bratcher,* 240 N.W.2d 871 (N.D.1976).

"Construction of a written contract to determine its legal effect is a question of law for the court to decide." *Stetson v. Blue Cross of North Dakota,* 261 N.W.2d 894, 896 (N.D.1978).

As regards "finding" number 5, we determine that the guaranty instrument is neither vague nor ambiguous.

"An ambiguity exists when good arguments can be made for either of several contrary positions as to the meaning of a term, . . . ." *Kruger v. Soreide,* 246 N.W.2d 764, 768 (N.D.1976).

The provisions of the guaranty which make it one of a continuing nature are too clear to admit of good argument for any position but the liability of R. M. Hart. Black's Law Dictionary defines vague as "indefinite." There is nothing indefinite about the guaranty or in the terms which make R. M. Hart liable. The guaranty is not vague for the same reasons it is not ambiguous.

The bank concedes that the guaranty is broad, but argues that this should not affect its validity. We agree. In *Midway National Bank v. Gustafson,* 282 Minn.

73, 165 N.W.2d 218, 220 (1969), the Minnesota Supreme Court observed that a similar, continuing guaranty was "about as broad in scope as could be imagined." The Minnesota court enforced that guaranty according to its terms. We conclude that the breadth of a contract alone does not invalidate it. Unless the great breadth also contributes to a finding of unenforceability due to unconscionability (§ 41–02–19(2–302), NDCC), unlawful restraint of business (§ 9–08–06, NDCC), fraud or other disqualification, the courts of North Dakota will enforce a broad contract.

As regards "finding" number 7, we determine that the provisions of § 22–01–15, NDCC,[1] are applicable, and we do not alter the interpretation of that statute made by this Court in *AMF, Incorporated v. Fredericks,* 212 N.W.2d 834 (N.D.1973). Nonetheless, we conclude that § 22–01–15, NDCC, does not authorize the dismissal of the bank's action.

R. M. Hart contends that a lack of notice of the issuance of the new notes automatically precludes his consent to alterations. This Court noted, in *State Bank of Burleigh County v. Porter,* 167 N.W.2d 527, 536 (N.D.1969), that "where a guaranty is continuing and absolute, the guarantor is not entitled to notice of each transaction in order to bind him. The statement that the guaranty is unconditional waives notice unless it is specifically provided for in writing." [Citation omitted.] In the instant case a waiver of notice was specifically provided. Nothing we said in *Porter, supra,* should be construed as applying this rule only where actual notice is received.

It is true that there are differences between the 1972 and 1975 notes, both as to term and rate of interest, and that these differences would amount to an alteration if *only* the original note had been guaranteed. Although the principal sum was always $35,000, the record does not

---

1. "22–01–15. When guarantor exonerated.—A guarantor is exonerated, except insofar as he may be indemnified by the principal, if, by any act of the creditor without the consent of the guarantor:

1. The original obligation of the principal is altered in any respect; or

2. The remedies or rights of the creditor against the principal in respect thereof are impaired or suspended in any manner."

reveal whether the notes were "renewals"[2] or new obligations. For the purposes of this opinion they are considered to be new obligations. By the terms of the guaranty, R. M. Hart agreed to "unconditionally guarantee the prompt payment . . . of . . . all notes . . . hereafter arising . . .." The note sued upon was not the first in the series of notes but the last.[3] It was sued upon in an unaltered form. Therefore § 22–01–15, NDCC, does not exonerate R. M. Hart from his guarantee. In effect, R. M. Hart guaranteed all of Robert Hart's debts to the bank, regardless of the origin of those debts, but subject to a $35,000 limitation. It is of no consequence that the note sued on is not the same note which was discussed when the guaranty was executed. The guaranty, by its terms, extends to the original note, the note sued on, and all of the intervening notes.

The judgment and order of the district court is reversed. The case is remanded for entry of judgment in favor of the bank.

SAND, Acting C. J., PAULSON and VOGEL, JJ., and MUGGLI, District Judge,[*] concur.

---

2. "A note is 'renewed,' within the meaning of that term as used in . . . [§§ 41–03–80 and 41–03–81, NDCC], when a new note evidencing the *same obligation* is executed and delivered by the-maker to the holder of the old note." [Emphasis supplied.] Syllabus ¶ 4, *Douglas County State Bank v. Sutherland,* 52 N.D. 617, 204 N.W. 683 (1925); *Liberty National Bank and Trust Co. v. Dvorak,* 199 N.W.2d 414, 417 (N.D.1972).

3. " . . . the guarantor is not released or discharged by the creditor's acceptance of a renewal note where it appears that the contract of guaranty contemplated renewals or was intended to secure payment of any note which might be given in extension or renewal of the original obligation." [Citations omitted.] See 38 Am.Jur.2d, Guaranty § 96.

* Sitting in place of ERICKSTAD, C. J., disqualified.