MANDAN SECURITY BANK, a corporation, Plaintiff and Appellee,

v.

Harlan HEINSOHN, Gerald Engel, Michael Heinsohn and Kenneth G. Austin, Defendants and Appellants.

MANDAN SECURITY BANK, a corporation, Plaintiff and Appellee,

v.

Harlan HEINSOHN, Gerald Engel, Michael Heinsohn and Kenneth G. Austin, individually and doing business as Landco, a partnership, Defendants and Appellants.

Civ. Nos. 10108, 10115.

Supreme Court of North Dakota.

June 10, 1982.

Kelsch Law Firm, Mandan, for defendants and appellants; argued by William C. Kelsch, Mandan.

Bair, Brown & Kautzmann, Mandan, for plaintiff and appellee; argued by Malcolm H. Brown, Mandan.

PAULSON, Justice.

The appellants in these consolidated cases appeal from the amended judgments entered by the District Courts of Morton and Burleigh Counties on October 13, 1981. We affirm.

In January of 1979, Landco, a partnership comprised of Harlan Heinsohn, Michael Heinsohn, Gerald Engel, and Kenneth Austin, applied to the Mandan Security Bank

for a $100,000 line of credit to be used for land development. The bank accepted the application based upon a financial statement provided by the partners showing their personal collective net worth to be in excess of three million dollars. The partners, in their individual capacities, signed an unconditional, continuing guaranty of payment of all loans made to Landco by the bank.

Landco drew against the $100,000 line of credit by taking four $25,000 loans and signing notes for each. When payment on the first two $25,000 notes became due, the notes were extended with an increase in interest. All four notes became due in May of 1980. The bank agreed to further extend the loans upon payment of all interest due through July 31, 1980, and with the bank accepting as collateral a short-term redemption mortgage on eight undeveloped residential lots in French's First Addition in Bismarck. The lots were valued by the partners at $15,000 each. The four prior notes were renewed by a single $100,000 note, to be repaid in quarterly $25,000 payments.

When Landco failed to make the first quarterly payment, the bank on January 19, 1981, demanded an interest payment through February 1, 1981. In response, Harlan Heinsohn and Gerald Engel met with the president of the bank on January 29, 1981, and tendered a quit-claim deed to the eight lots, along with a letter of transmittal. On February 6, 1981, the deed and letter of transmittal were returned to Landco by the bank's attorney.

On February 6, 1981, the bank served notice before foreclosure. On March 30, the bank commenced its foreclosure action, which was venued in Burleigh County, the location of the mortgaged property. On April 3, the bank commenced a separate action in Morton County against the partners individually on the guaranty which they had signed on February 5, 1979. The two cases were consolidated for trial, and the district court entered judgment in both cases for the bank. In the Morton County case, the district court entered judgment against the individual partners in the amount of $100,000 principal and $18,519 interest through July 23, 1981, plus interest accruing thereafter. In the Burleigh County case, the district court entered judgment against Landco in an identical amount, and further ordered that the bank could at a later date apply for a judgment and decree of foreclosure of the mortgage. The district court precluded the possibility of a double recovery by providing that amounts collected under either judgment are to be set off against the other judgment.

The following issues are raised on appeal:

1) Does the anti-deficiency statute contained in the Short-Term Mortgage Redemption Act, Chapter 32–19.1, North Dakota Century Code, prohibit recovery by the bank on the guaranties of the individual partners?

2) Did the district court err in finding that the mortgage did not exonerate the individual partners of liability on their previously executed guaranties?

3) Did the bank accept the tender of the deed in satisfaction of the debt?

4) Did the district court err as a matter of law in concluding that the mortgage in this case had not been foreclosed and in ordering judgment that allowed for later application for judgment of foreclosure?

I.

The first issue raised is whether or not the anti-deficiency statute contained in the Short-Term Mortgage Redemption Act precludes recovery against the individual partners on their guaranties of the partnership debt. The appellants argue that a partnership is not a separate legal entity and that the partners are therefore the primary obligors on the note, so that their individual guaranties add nothing to their primary liability on the note. Thus, they argue, the anti-deficiency statute precludes recovery on the individual guaranties. In support of this argument, the appellants cite two California cases, *Union Bank v. Dorn*, 254 Cal. App.2d 157, 61 Cal.Rptr. 893 (1967), and *Riddle v. Lushing*, 203 Cal.App.2d 831, 21 Cal.Rptr. 902 (1962).

In *Dorn* and *Riddle* the respective courts held that a guaranty of a partnership debt signed by a partner in his individual capacity adds nothing to his primary liability as a principal obligor, and therefore recovery on the guaranty is precluded by the anti-deficiency statute. In *Dorn, supra*, 61 Cal.Rptr. at 894, the court stated:

" . . . in the present case it clearly appears that the supposed guarantors against whom suit has been brought are nothing more than principal obligors under another name. It is settled that liability as a guarantor adds nothing to the primary liability of a principal obligor. (*Valinda Builders, Inc. v. Bissner*, 230 Cal.App.2d 106, 40 Cal.Rptr. 735) In our view, respondents, both as principal obligors and as supposed guarantors, are entitled to the full protection of Code of Civil Procedure, section 580d, just as the guarantors in *Riddle v. Lushing*, 203 Cal.App.2d 831, 834, 21 Cal.Rptr. 902, were entitled as primary obligors to the full benefits and protection of section 580b, the section which prohibits deficiency judgments on purchase money mortgages."

We disagree with the conclusions reached by the California courts in *Dorn* and *Riddle*. We conclude that a partner who personally guaranties payment of a partnership debt has changed the nature of his obligation on the debt, and the anti-deficiency statute does not preclude recovery by the bank on the individual guaranty.

Although this Court has previously stated in dicta that a partnership is not a separate legal entity, *501 DeMers, Inc. v. Fink*, 148 N.W.2d 820, 824 (N.D.1967), the nature of a partner's liability on partnership debts is different than his individual liability on individual obligations. In *Eastern Metals Corp. v. Martin*, 191 F.Supp. 245, 249 (S.D. N.Y.1960), the United States District Court for the Southern District of New York stated:

"The liability of a partner for the debts and obligations of the partnership has been defined and explained in *Ruzicka v. Rager*, 305 N.Y. 191, 111 N.E.2d 878, 882, 39 A.L.R.2d 288, from which the following is quoted:

'To some degree the individual liability of a partner is not the ordinary individual liability of one who obligates himself as an individual. Rather, the individual liability of a partner is merely an incident of the partnership liability. Judge Pound writing for the court in *Hartigan v. Casualty Co. of America* (227 N.Y. 175, 178, 124 N.E. 789, 790, supra) phrased the conception clearly and concisely as follows: "When a partnership is established, the liability of the individual partners is an incident of the partnership merely, not a separate and independent liability." We think the Hartigan case and *Geitner v. United States Fidelity & Guar. Co.*, 251 N.Y. 205, 167 N.E. 222 point this up very clearly.

'The difference in the relationship of a partner as such and as an individual to creditors, e.g., the unavailability of partnership assets for execution on individual claims and the priorities of firm and individual creditors upon insolvency, further illustrate the general principle that a person who holds membership in a partnership acts, serves and is obligated in two distinct and differing capacities (See Partnership Law, §§ 51, 71; Debtor and Creditor Law, Consol. Laws, c. 12, § 277.)'

"The liability of the partners for an obligation of the partnership, arising from a breach of contract by the partnership, is joint. That is the situation in the case at bar. Neither Shulman nor Martin entered into a separate obligation to perform the partnership contract made by Eastern with Martin Enterprises."

The nature of a partner's liability for partnership debts is set forth in § 45–06–07 of the North Dakota Century Code [§ 15, Uniform Partnership Act]:

"*45–06–07. Nature of partner's liability.* —All partners are liable:

1. Jointly and severally for everything chargeable to the partnership under sections 45–06–05 and 45–06–06.

2. Jointly for all other debts and obligations of the partnership; but any partner may enter into a separate obligation to perform a partnership contract."

 In the case at bar, the partners have each entered into separate obligations to perform the partnership contract. The effect of these separate obligations is to make the partners' liability joint and several, rather than joint. The partners are jointly and severally liable on their individual guaranties, and this liability is distinct from their joint liability on the underlying partnership debt. The partners have incurred liability in two separate and distinct capacities and we do not agree with the California courts in *Dorn* and *Riddle* that a partner's liability on his individual guaranty "adds nothing to the primary liability" of the partners.

 We therefore conclude that the guaranties of the individual partners are valid, separate obligations to pay the partnership debt, and recovery on the guaranties is not precluded by the anti-deficiency statute. The anti-deficiency provision in the Short-Term Mortgage Redemption Act is contained in § 32–19.1–07, N.D.C.C.:

"*32–19.1–07. No deficiency judgment allowed.*—When any mortgage has been foreclosed under··this chapter, the mortgagee or any party claiming by, through, or under said mortgagee shall not be entitled to any judgment for deficiency."

In *Bank of Kirkwood Plaza v. Mueller*, 294 N.W.2d 640, 643 (N.D.1980), we held that anti-deficiency statutes do not preclude recovery from a guarantor:

"The action in the instant case against the guarantors, on the other hand, is not based on obligations imposed by the notes or the mortgages given to secure the notes, but on a separate and distinct contract of guaranty. A contract of guaranty is defined as follows:

'The contract of a guarantor is his own separate contract. It is in the nature of a warranty by him that the thing guaranteed to be done by the principal shall be done, and not merely an engagement jointly with the principal to do the thing. . . . [Citations omitted.] A liability such as this, although it may result in requiring a guarantor to pay the note, is not predicated upon "the terms of the instrument," but upon a contract entirely separate and distinct.' *Northern State Bank v. Bellamy*, 19 N.D. 509, 125 N.W. 888, 890 (1910). "See also § 22–01–01, NDCC.

"Thus, although the guarantors may be required to pay the notes in the instant case, the liability is not predicated on the notes or the mortgages, as in [*First State Bank of Cooperstown v. Ihringer*, 217 N.W.2d 857 (N.D.1974) ], but on the separate contract of guaranty.

\*　　\*　　\*　　\*　　\*　　\*

"Secondly, although the intent may be clear from the language of North Dakota's anti-deficiency statutes that non-mortgagor debtors are covered within the scope of the statute, it is not clear that guarantors were also meant to be covered. We will not extend the scope of the anti-deficiency statutes beyond that which is clear from the statute. *Fetzer v. Minot Park District*, 138 N.W.2d 601 (N.D.1965). The Legislature may, if it wishes, include guarantors within the protection of the anti-deficiency statutes. It has not done so."

We hold that in the instant case the bank is not precluded from recovering against the partners on their individual guaranties by the anti-deficiency statute in the Short-Term Mortgage Redemption Act.

II.

The next issue raised is whether or not the district court erred in finding that the execution of the mortgage did not exonerate the individual partners of liability on their guaranties. The appellants contend that it was the parties' intent that the mortgage executed at the time that the four $25,000 notes were renewed as a single $100,000 note was to be the sole collateral for the new note, and that the bank was no longer relying upon the partners' guaranties. The district court disagreed with this

argument, and in its memorandum opinion made the following finding of fact:

"When the Plaintiff took the note and mortgage because the defendants defaulted, the Plaintiff made no attempt to value or appraise the eight lots and took such security as Defendants offered. Plaintiff's intent was to secure itself at least in part, but there is nothing to indicate the security of the note and mortgage was in any way to alter, release, replace of [sic] extinguish the guaranty. Defendants' attorney in oral argument pretty much admitted that the guaranty continued beyond July 31, 1980 and relied on the tender of deed as extinguishing the debt of LANDCO upon which guaranty liability depended. However, nothing indicates plaintiff substituted collateral for the guaranty."

The appellants argue that this finding is clearly erroneous. Rule 52(a), N.D.R.Civ.P. The appellants specifically point to the fact that the bank's "Comment Sheet and Credit Analysis" [1] for Landco's account contained notations that security for the new note was "Eight lots in French's Addition," and that the "loan is now secured by eighth [sic] residential lots valued at $15,000 each." They contend that the fact that the comment sheet does not mention the guaranty in connection with the new note indicates the parties' intent that the sole security for the loan was the eight residential lots, and that the partners were released from liability under their guaranties. At trial, officers of the bank testified that they viewed the mortgage on the residential lots as only partial security for the note, and that they were still relying on the personal guaranties of the individual partners in extending the loan and issuing the new note. The language of the guaranties also indicates that the guaranties were intended to remain in force regardless of later changes in security.[2] *See First National Bank & Trust Co. of Bismarck v. Hart,* 267 N.W.2d 561, 564–565 (N.D.1978). The guaranties expressly provide that they remain in effect until the guarantors terminate them in writing. There has been no evidence presented which

---

1. The "Comment Sheet and Credit Analysis" is kept in the ordinary course of the bank's business to record the history of each particular loan. Entries are made on the comment sheet by bank officials each time a transaction affecting the loan occurs.

2. The guaranties provide, in pertinent part:
 "For valuable considerations, receipt of which is hereby acknowledged, and to induce you to loan money or extend credit to; to purchase, accept or discount notes, instruments or other evidence of indebtedness of or from; and generally to do business with Landco , whose residence or principal place of business is Mandan, North Dakota hereinafter called the 'Principal Debtor', the undersigned does hereby, absolutely and unconditionally, as primary obligor, guarantee to you full and prompt payment when due, whether due by acceleration, maturity or otherwise, of any and all such loans, advances and credit, and of any and all indebtedness, liabilities and obligations of every kind, nature and description, owed to you by the Principal Debtor, whether direct or indirect, absolute or contingent, whether now due and owing, or which may hereafter, from time to time, be or become due and owing, whether heretofore or hereafter created or arising, including any and all renewals, extensions or modifications thereof, all without your first having to proceed against the Principal Debt-

or or otherwise enforce or commence to enforce payment thereof.
 \* \* \* \* \* \*
 *"This guaranty is made and shall continue as to any and all of the above described obligations, liabilities and indebtedness of the Principal Debtor to you incurred or arising prior to receipt by you of written notice of the termination hereof from the undersigned, without regard to collateral, security, or other primary or secondary obligors, if any, or to the validity, effectiveness, regularity or enforceability thereof, or the validity, effectiveness, regularity or the enforceability of any of the obligations or indebtedness guaranteed hereby. It is hereby consented and agreed that you may, from time to time, without notice and without in any manner affecting or impairing the obligations created hereby, sell, release, surrender, exchange, substitute, settle, compromise, waive, subordinate or modify, with or without consideration and on such terms and conditions as may be acceptable to you, any and all collateral, security, guaranties, obligations, indebtedness, liabilities, notes, instruments, or other evidence of indebtedness and/or the person or persons obligated thereon for and concerning which payment is guaranteed hereby."* [Emphasis added.]

indicates that any written termination was ever made.

A finding of fact is clearly erroneous only when, although there is some evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Northwestern Equipment, Inc. v. Cudmore*, 312 N.W.2d 347, 352 (N.D.1981); *Kasper v. Provident Life Insurance Co.*, 285 N.W.2d 548, 551 (N.D.1979); *Bladow v. Bladow*, 249 N.W.2d 917, 920 (N.D.1977); *Eakman v. Robb*, 237 N.W.2d 423, 429 (N.D. 1975). Questions of fact decided by the trial court on conflicting evidence are not subject to reexamination by this Court on appeal. *Hoge v. Burleigh County Water Management District*, 311 N.W.2d 23, 28 (N.D.1981); *Kasper v. Provident Life Insurance Co., supra*, 285 N.W.2d at 551. In the instant case, there is conflicting evidence regarding the continued validity of the guaranties after the bank took the mortgage. After reviewing the record in this case, we do not believe that the district court's finding that the mortgage was not intended by the parties to alter, release, replace, or extinguish the guaranty was clearly erroneous.

### III.

The appellants next contend that the district court's finding that the bank had not accepted the tender of the quit-claim deed in full satisfaction of the entire debt is clearly erroneous. Landco, through Harlan Heinsohn and Gerald Engel, delivered the deed with a letter of transmittal to the president of the bank on January 29, 1981. The letter of transmittal states in part: "We are, therefore, enclosing with this letter, Landco's Quit Claim Deed to [the eight residential lots] in payment in full of Landco's debt to the Bank ...." Mr. L. F. Gerhardt, president of Mandan Security Bank, testified that he met with Heinsohn and Engel on January 29, 1981, and that the deed and letter were delivered to him. He further testified, however, that he informed Heinsohn and Engel at that time that the bank would not under any circumstances accept the deed in full satisfaction of the debt, and that the bank would hold the partners liable for the debt under their guaranties. The bank returned the quit-claim deed a few days later, on February 6, 1981, after consulting its attorney.

Harlan Heinsohn testified that no mention of a possible deficiency was made at the January 29, 1981, meeting with Mr. Gerhardt. The appellants also point to the lack of any notation on the bank's comment sheet for that date regarding the discussion of a possible deficiency to support their argument that the bank accepted the deed in full satisfaction of the entire debt.

We note that the mere retention of the deed for a few days does not, of itself, constitute an acceptance of the deed in full satisfaction of the debt. *See Schumacher Homes, Inc. v. J & W Enterprises*, 318 N.W.2d 763, 765 (N.D.1982).

We are therefore again presented with conflicting evidence on a question of fact. Upon a review of the evidence, we conclude that the district court's finding was not clearly erroneous.

### IV.

Finally, the appellants contend that the district court erred as a matter of law in concluding that the mortgage had not been foreclosed and in ordering judgment that allowed for a later application by the bank for judgment of foreclosure. The appellants argue that the judgment in the foreclosure action is in violation of § 32–19–06, N.D.C.C., which provides, in pertinent part:

"*32–19–06. What judgment shall contain—Deficiency judgments and other suits prohibited in excess of amount by which debt exceeds fair value of mortgaged premises—Determination of fair value of mortgaged real property.—*In any action for the foreclosure of a real estate mortgage or the cancellation or the foreclosure of a land contract, the court shall have the power to render judgment for the amount found to be due at the

time of the rendition of said judgment, and the costs of the action, and to order and decree a sale of the premises in such mortgage or contract described, or such part thereof as may be sufficient to pay the amount adjudged to be due and the costs of the action."

The appellants contend that this section *requires* that a judgment in a foreclosure action contain a decree of sale. However, the statute does not provide that the court *shall* decree a sale of the property, but rather provides that the court "shall have the *power* . . . to order and decree a sale of the premises." There is no absolute requirement that the judgment contain a decree of sale.

We conclude that the form of relief afforded by the judgments entered in these two cases is not improper. The district court has, in effect, given the bank an opportunity to elect its remedy. Under the provisions of the memorandum opinion and the judgments, the bank may elect to proceed first on its judgment against the individual partners and attempt to collect on their guaranties. Any sums collected under this judgment would be set off against the recovery in any later attempt by the bank to foreclose on the mortgaged property. In the alternative, the bank could immediately seek a decree of sale in the foreclosure action. Should the bank elect to proceed on the foreclosure action first, the memorandum opinion provides that election of this remedy "shall have the effect of satisfying in full the judgment or any balance due thereunder in the Morton County [guaranty] action." The bank is thus precluded from collecting a double recovery on the two judgments.

We conclude that the form of relief granted in these cases, although unusual, is not improper.

The judgments are affirmed.

ERICKSTAD, C. J., and PEDERSON and SAND, JJ., concur.

VANDE WALLE, Justice, dissenting.

I respectfully dissent. The majority opinion provides a method to adroitly avoid the antideficiency statute, Section 32–19.1–07, N.D.C.C., at least with regard to partnerships. Because the majority opinion holds that a partnership debt is a separate obligation from that of the debt of the individual partners, it also concludes that the guaranty of the individual partners is a separate obligation to pay the partnership debt and is not precluded by the terms of the antideficiency statute. Therefore, a partnership seeking a loan may be required to provide a mortgage on real property as well as the individual guaranty of the individual partners. In periods of economic "good times" with increasing property prices any default will no doubt be covered by the mortgage security. In periods of recession and deflating prices for real estate we may assume the lender will turn to the individual borrowers (guarantors), unless they are judgment-proof, at which time they may resort to the mortgage security for payment. On its face this arrangement may seem equitable. However, North Dakota's experience with mortgage foreclosures led our Legislature to enact the antideficiency statutes. The history, purpose, and intent of these statutes has been well documented in *First State Bank of Cooperstown v. Ihringer*, 217 N.W.2d 857 (N.D.1974), and I will not repeat that background here. It is sufficient to note that the statutes clearly reflect the concern of this State with antideficiency judgments. Both the majority opinion written by Justice Vogel and the opinion concurring in part and dissenting in part written by Justice Teigen concluded that the mortgagee may proceed in an action at law to enforce payment of the debt against any person obligated thereunder *who is not* the mortgagor or purchase contractor or their successors. *Ihringer* was concerned with the provisions of Chapter 32–19, N.D. C.C., which permit antideficiency judgments under certain limited conditions. Here, we are concerned with Section 32–19.1–07, a provision of the short-term redemption chapter, which prohibits deficiency judgments altogether.

In *Bank of Kirkwood Plaza v. Mueller*, 294 N.W.2d 640 (N.D.1980), we held that the bank could proceed on the guaranty, separate and apart from the mortgage. In that case the mortgagor was a corporation and, as the facts recited therein indicate, none of the guarantors signed the mortgages and only one guarantor signed the notes. I concede that there is language in that opinion which indicates that a contract of guaranty is separate and apart from the liability which arises from the mortgages or the notes secured thereby. We indicated that we would not extend the antideficiency statutes to include guarantors under their protection. But *Bank of Kirkwood Plaza* involved a corporation as a mortgagor. Neither that case nor any of the cases cited in support therein involve a guaranty which has been executed by the same individuals who signed the note and mortgage. A corporation is, of course, a legal entity separate and apart from the individual directors, officers, or shareholders of the corporation. I agree that the antideficiency statutes do not protect separate guarantors—those who have not executed the note or mortgage as individuals—but I do not read the decision in *Bank of Kirkwood Plaza* to hold that mortgagors who also executed a separate guaranty are not within the protection of the antideficiency statutes. To the extent that the decision is so construed, I disavow it. While the majority decision in this instance stops short of stating that individual mortgagors who are also required to sign a guaranty before receiving a loan are not protected by the antideficiency statutes, it indicates, by the quotations from the *Bank of Kirkwood Plaza* decision, that such may be the holding of the majority if the case were squarely presented to us.

In this instance the mortgagor is a partnership, not a corporation. Apparently the majority opinion concludes that Section 45–06–07(2), N.D.C.C., which provides that a partner may enter into a separate obligation to perform a partnership contract, is sufficient to differentiate between a person who signs a mortgage as a partner and executes a guaranty as an individual. I do not agree. The conclusion creates a difference too fine for me to accept. I do agree with the rationale of the decisions cited but not followed in the majority opinion, i.e., *Union Bank v. Dorn*, 254 Cal.App.2d 157, 61 Cal.Rptr. 893 (1967), and *Riddle v. Lushing*, 203 Cal.App.2d 831, 21 Cal.Rptr. 902 (1962), that liability as a guarantor adds nothing to the primary obligation of a principal obligor.

When the status of a partnership, as opposed to a corporation, is considered with the intended effect of the antideficiency statutes, I cannot conclude that the individual partners can be proceeded against on the basis of their individual guaranties after having executed the note and mortgage as partners. Such a result is a mere circumvention of the protection intended to be afforded by the antideficiency statutes. Notes and mortgages are often contracts of adhesion and if we permit a lender to merely require an individual guaranty from the mortgagees as a condition of the loan and thereby obviate the protection of the antideficiency statutes, we do violence to the intent and purpose of the antideficiency statutes.