FIRST NATIONAL BANK & TRUST
OF WILLISTON, Plaintiff
and Appellee,

v.

Loye ASHTON, a/k/a Loye A.
Ashton, Defendant,

Richard Jensen and Verlin Fossum,
Defendants and Appellants.

Civ. No. 880299.

Supreme Court of North Dakota.

Feb. 10, 1989.

Anseth & Zander, Williston, for defendants and appellants; argued by Janet Holter Zander.

McIntee & Whisenand, P.C., Williston, for plaintiff and appellee; argued by Terry R. Lorenz, Williston.

ERICKSTAD, Chief Justice.

The defendants Richard Jensen and Verlin Fossum appeal from a judgment issued by the district court which held that Jensen and Fossum were jointly and severally liable to the plaintiff, First National Bank & Trust Company of Williston, as a result of the guaranty they each signed and further dismissed their counterclaim against the Bank. We reverse in part, affirm in part, and remand with instructions.

On October 14, 1983, Jensen, Fossum, and Loye Ashton executed a promissory note in favor of the Bank in the amount of one hundred and eighty-four thousand, one hundred and ninety dollars ($184,190). The note was secured by a mortgage on Williston Basin Mineral Technology Subdivision property, in the amount of $184,190, and was signed by Jensen, Fossum, and Ashton as tenants in common. Additionally, the three men each signed written guaranties. The mortgage and guaranties were executed simultaneously with the note.

On June 4, 1987, the Bank commenced an action against Jensen, Fossum, and Ashton, seeking a monetary judgment, alleging that the promissory note was in default and that the men were personally liable, jointly and severally, based upon the guar-

anty each had signed. Jensen and Fossum[1] answered the complaint, asserting that the promissory note was secured by a mortgage signed by each of the co-makers, thus prohibiting the Bank from suing directly on the note. They further asserted that the guaranties were limited. The Bank amended its complaint, alleging more specifically that the guaranties referred to were unconditional. Jensen and Fossum answered the amended complaint, reasserted their position as set forth in the original answer, and brought a counterclaim against the Bank, asserting that "the Plaintiff, by going after the Defendants individually and jointly has caused great and irreparable damage to their reputation and to their well-being and mental condition."

Jensen and Fossum then submitted a motion to the trial court to dismiss the complaint without prejudice. The Bank resisted the motion and made a cross motion for summary judgment in its favor and for dismissal of the counterclaim. On September 9, 1988, the district court denied Jensen's and Fossum's motion for dismissal and granted the Bank's motion for summary judgment and dismissal of the counterclaim.

The issues on appeal are:

1. Whether or not the district court erred in denying Jensen's and Fossum's motion for dismissal of the Bank's complaint;

2. Whether or not the district court erred in granting summary judgment in favor of the Bank; and

3. Whether or not the district court erred in dismissing Jensen's and Fossum's counterclaim.

On August 20, 1982, Ashton, Jensen, and Fossum signed a promissory note in the amount of $96,139.45 at 16.5% interest. On October 14, 1983, that first note was renewed and incorporated into another promissory note in the amount of $184,190 at 15% interest, signed by all three men. The second note indicated that it was secured by a separate real estate mortgage. A mortgage in the amount of $184,190 describing property known as the Williston Basin Mineral Technology Subdivision, was signed by Ashton, Jensen, and Fossum, as tenants in common, on October 14, 1983.

In addition to the promissory note and mortgage, Jensen, Fossum, and Ashton also executed individual guaranties in the amount of $184,190. The language of the guaranty indicated that it was an unconditional, continuing guaranty, but also made reference to specific liens against the property securing the mortgage. The Bank contends that "by executing these guaranties, each of the Defendants obligated themselves to pay the total debt of this entity or group of individuals, should the matter go into default." Jensen and Fossum argue that to permit the Bank to "circumvent the anti-deficiency statutes by the use of the guaranties executed by the same individuals as executed the promissory note and mortgage under the ... argument that the guarantors were not promising to answer for their own obligation but were in effect promising to answer for the debts of their co-mortgagors, would literally destroy the purpose of the anti-deficiency statutes and would allow lenders to avoid the effect of the anti-deficiency statutes by requiring multiple mortgagors to sign individual guaranties." Jensen and Fossum claim that the guaranties were limited to certain judgments and claims of interest against the property as related to a third party.

■ We have said that "[a] lender that takes a mortgage on real property as security for a debt foregoes its right to proceed initially against the mortgagor directly on the debt, but receives in return the added protection of an interest in the property." *H & F Hogs v. Huwe*, 368 N.W.2d 553, 556 (N.D.1985). Where a promissory note is executed in conjunction with the

---

1. During the pendency of the proceedings, Ashton filed bankruptcy proceedings in U.S. Bankruptcy Court such that the state district court proceedings were automatically stayed under the provisions of the bankruptcy law. Upon motion by the Bank, the trial court stayed and severed the claims and counterclaims brought by or against Ashton and ordered that all remaining claims involving other parties proceed unabated and unaffected by the stay and severance.

taking of a mortgage, the provisions of the state's anti-deficiency statutes apply. *Mischel v. Austin*, 374 N.W.2d 599, 600 (N.D. 1985).

Section 32–19–07, N.D.C.C., provides in pertinent part:

"Except as otherwise provided in sections 32–19–04 and 32–19–06, neither before nor after the rendition of a judgment for the foreclosure of a real estate mortgage or for the cancellation or foreclosure of a land contract made after July 1, 1951, shall the mortgagee or vendor, or the successor in interest of either, be authorized or permitted to bring any action in any court in this state for the recovery of any part of the debt secured by the mortgage or contract so foreclosed. It is the intent of this section that no deficiency judgment shall be rendered upon any note, mortgage, or contract given after July 1, 1951, to secure the payment of money loaned upon real estate or to secure the purchase price of real estate, and in case of default the holder of a real estate mortgage or land contract shall be entitled only to a foreclosure of the mortgage or the cancella-

tion or foreclosure of the contract except as provided by sections 32–19–04 and 32–19–06."

Sections 32–19–04 [2] and 32–19–06, N.D. C.C.,[3] set forth the procedure to be followed in seeking a deficiency judgment, and provide that a mortgagee may seek a deficiency judgment in a separate action brought *after* the foreclosure and sheriff's sale.

We have previously construed these statutes to prohibit an action by a mortgagee against a mortgagor directly on the debt. *See H & F Hogs*, 368 N.W.2d at 556, citing *McKee v. Kinev*, 160 N.W.2d 97 (N.D.1968); *Loraas v. Connolly*, 131 N.W.2d 581, 586 (N.D.1964). As we stated in *Loraas v. Connolly*, 131 N.W.2d at 586:

"Sections 32–19–04 and 32–19–06, supra, permit separate actions for deficiencies, and actions after foreclosure in the case of mortgages executed subsequent to July 1, 1951. They do not authorize actions upon a debt secured by a real property mortgage only, without resort to foreclosure. Since all actions upon the debt, or any part thereof, except as authorized by the foregoing sections, are

2. Section 32–19–04, N.D.C.C., provides:

"*What complaint shall state.*—In an action for the foreclosure or satisfaction of a mortgage, the complaint shall state whether any proceedings have been had at law or otherwise for the recovery of the debt secured by such mortgage, or any part thereof, and if there have been, whether any and what part thereof has been collected. The plaintiff shall also state in his complaint whether he will in a later and separate action demand judgment for any deficiency which may remain due to him after sale of the mortgaged premises against every party who is personally liable for the debt secured by the mortgage."

3. Section 32–19–06, N.D.C.C., provides in pertinent part:

"*What judgment shall contain—Deficiency judgments and other suits prohibited in excess of amount by which debt exceeds fair value of mortgaged premises—Determination of fair value of mortgaged real property.*—In any action for the foreclosure of a real estate mortgage or the cancellation or the foreclosure of a land contract, the court shall have the power to render judgment for the amount found to be due at the time of the rendition of said judgment, and the costs of the action, and to order and decree a sale of the premises in

such mortgage or contract described, or such part thereof as may be sufficient to pay the amount adjudged to be due and the costs of the action.... The court under no circumstances shall have power to render a deficiency judgment for any sum whatever against the mortgagor or purchaser, or the successor in interest of either, except as hereinafter provided. Where a note or other obligation and a mortgage upon real property have been given to secure a debt contracted subsequent to July 1, 1951, and the sale of the mortgaged premises has failed to satisfy in full the sum adjudged to be due and the costs of the action, the plaintiff may, in a separate action, ask for a deficiency judgment, if he has so indicated in his complaint, against the party or parties personally liable for that part of the debt and costs of the action remaining unsatisfied after the sale of the mortgaged premises. Such separate action for a deficiency judgment must be brought within ninety days after the sale of the mortgaged premises. The court, in such separate action, may render a deficiency judgment against the party or parties personally liable, but such deficiency judgment shall not be in excess of the amount by which the sum adjudged to be due and the costs of the action exceed the fair value of the mortgaged premises."

barred, it follows that a mortgagee may not bring an action upon the secured debt, against the mortgagor, without resort to foreclosure."

The Bank did not proceed to foreclose the real estate mortgage securing the promissory note. The Bank instead sought a judgment against Jensen, Fossum, and Ashton, jointly and severally, pursuant to the guaranty agreement executed by them, noting that the judgment was sought separately and apart from any remedy that might be available to the Bank as a result of the promissory note and other loan documents that had been executed.

■ The Bank relies on *Bank of Kirkwood Plaza v. Mueller*, 294 N.W.2d 640 (N.D.1980), and *Mandan Security Bank v. Heinsohn*, 320 N.W.2d 494 (N.D.1982), to support its position that the guaranties were each separate contracts and that the guaranty obligations of the individuals were separate from the obligation of the group of individuals who signed the promissory note.

Section 22–01–01, of the North Dakota Century Code, defines a guaranty as "a promise to answer for the debt, default, or miscarriage of another person." In *Bank of Kirkwood Plaza, supra*, 294 N.W.2d at 643, we described a contract of guaranty as follows:

" 'The contract of a guarantor is his own separate contract. It is in the nature of a warranty by him that the thing guaranteed to be done by the principal shall be done, and not merely an engagement jointly with the principal to do the thing.... [Citations omitted.] A liability such as this, although it may result in requiring a guarantor to pay the note, is not predicated upon "the terms of the instrument," but upon a contract entirely separate and distinct.' *Northern State Bank v. Bellamy*, 19 N.D. 509, 125 N.W. 888, 890 (1910)."

In *Bank of Kirkwood Plaza*, a corporation executed three promissory notes and secured them with three mortgages. The same day, three individuals executed a continuing guaranty agreement whereby they individually and unconditionally guaranteed

payment of any obligation between the corporation and the Bank. None of the guarantors signed the mortgages and only one signed the promissory notes. Upon default, the Bank foreclosed against the corporation on the mortgages and also brought an independent action against the guarantors based on the guaranty agreement. The guarantors contended that such an action was barred under North Dakota's anti-deficiency statutes.

We reviewed the language of the anti-deficiency statutes (§§ 32–19–04, 32–19–06, and 32–19–07, N.D.C.C.) and, although it was clear that the non-mortgagor debtors were covered, it was not clear whether or not guarantors were also meant to be covered. We therefore declined to extend the scope of the statutes beyond that which was clear from the statutes. We concluded that the liability of the guarantors was derived wholly from the guaranty agreement. Upon review of that agreement, we found that it was clear that the guaranty was absolute and liability became fixed upon default of the debtor. We held that the Bank could proceed directly against the guarantors for a money judgment.

The case at hand can be distinguished from *Bank of Kirkwood Plaza* in that all three guarantors are also mortgagors in this case, whereas in the *Bank of Kirkwood Plaza* the corporation executed the mortgage and the individual stockholders were the guarantors. Furthermore, the Bank has not attempted to foreclose the mortgages but has instead proceeded solely against the guarantors for the entire debt.

In *Mandan Security Bank, supra*, 320 N.W.2d 494, a partnership established a line of credit with the Bank to be used for land development. In their individual capacities, each partner signed an unconditional, continuing guaranty of a payment of all loans made to the partnership by the Bank. Money was borrowed and the partnership signed notes for the loans drawn, which were eventually secured by a short-term redemption mortgage on some development property.

Upon default, the Bank secured a judgment foreclosing the mortgage on the real estate and commenced a separate action against the partners individually on the guaranty they had signed. The partners argued that the anti-deficiency statute prohibited recovery by the Bank against the individual partners. We disagreed and concluded that a partner who personally guarantees payment of a partnership debt has changed the nature of his obligation on the debt, and the anti-deficiency statute does not preclude recovery by the Bank through the individual guaranty.

The case at hand can be distinguished from *Mandan Security Bank*. There a partnership signed the notes, but the partners individually guaranteed the notes, acting in their own capacity and not on behalf of the partnership. We said those guaranties were valid, separate obligations to pay the partnership debt and therefore recovery on the guaranties was not precluded by the anti-deficiency statute. Here we have no such separate obligations and no asser-

tion of partnership in any of the documents. Jensen, Fossum, and Ashton each signed the note and mortgage, and in addition, executed individual guaranties. In light of the obligating language of the note and guaranties, we believe the signors executed those documents in the same capacity.[4]

Jensen and Fossum claim that this case is more comparable to *Hagan v. Havnvik*, 421 N.W.2d 56 (N.D.1988), than to *Bank of Kirkwood Plaza, supra,* or *Mandan Security Bank, supra.* In *Hagan*, Havnvik, a builder and operator of gasoline stations and convenience stores, entered into a contract for deed with the Hagans to buy a parcel of real property. In addition, Havnvik signed a guaranty in which he personally guaranteed the full and complete performance of the entire contract for deed. When Havnvik failed to pay the annual installment due under the contract for deed, the Hagans declared the entire balance of the contract for deed due and

---

**4.** The promissory note, signed by all three men, provides in pertinent part:

| "Richard A. Jensen | FIRST NATIONAL BANK & TRUST | Loan Number 235457 |
|---|---|---|
| Loye A. Ashton | CO. of WILLISTON | Date              October 14, 1983 |
| Verlin L. Fossum | Williston, North Dakota | Maturity Date October 14, 1986 |
| Box 1481 Williston, ND 58801 | 58802–1827 | Loan Amount $184,190.00 |
| | | |
| Borrower's Name and Address | Lender's Name and Address | Renewal Of |
| 'I' includes each borrower | 'You' means the lender, its | |
| above, jointly and severally. | successors and assigns. | |

"Note: I promise to pay to you, or your order, at your address above, the principal sum of: One Hundred Eighty Four Thousand One Hundred Ninety and no/100 Dollars $184,190.00."

---

Each guaranty included the following language:

"FOR VALUE RECEIVED, ... in hand to each of the undersigned guarantors by the FIRST NATIONAL BANK & TRUST CO. OF WILLISTON of WILLISTON, NORTH DAKOTA 58801 hereinafter called the Bank, the receipt whereof is hereby acknowledged, and in consideration of credit already given and which may hereafter be given to Richard A. Jensen, Loye A. Ashton, and Verlin L. Fossum, as tenants in common, hereinafter called the Debtor, and at the special instance and request of the Bank, we do hereby jointly and severally unconditionally guarantee the prompt payment when due, ... provided, however, that the limit of liability hereon shall not exceed the sum of One Hundred Eighty Four Thousand One Hundred Ninety

and No/100 ___ Dollars ($184,190.00), plus expenses of collection, attorneys fees and accrued interest to date of payment."

Additionally, the mortgage provided in pertinent part as follows:

"THIS INDENTURE ... between Richard A. Jensen, Loye A. Ashton, and Verlin L. Fossum, as tenants in common, ... and First National Bank & Trust Co. of Williston ...:

"WITNESSETH, [t]hat the said parties of the first part, for and in consideration of the sum of One Hundred Eighty Four Thousand One Hundred Ninety and no/100 Dollars to them in hand paid by the said party of the second part, the receipt whereof is hereby acknowledged, do by these presents Grant, Bargain, Sell and Convey to the said party of the second part, its successors and assigns,

sought to foreclose the contract for deed. In addition, the Hagans sought a deficiency judgment against Havnvik. Havnvik contended that he could not be held personally liable as the result of a personal guaranty wherein he guaranteed his own performance under a contract for deed.

In *Hagan*, Havnvik was a party to the principal obligation of the contract for deed. Additionally, Havnvik was a party to the guaranty which guaranteed the performance for the contract for deed. Thus Havnvik was both the principal debtor and the guarantor of the contract for deed.

We did not believe that the guaranty by Havnvik was "a promise to answer for the debt, default, or miscarriage of another person" within the definition of guaranty in section 22–01–01 of the North Dakota Century Code. We therefore concluded that Havnvik was not personally liable, as the result of his personal guaranty, for the balance of the deficiency, if any, after the foreclosure sale. *Hagan v. Havnvik, supra*, 421 N.W.2d at 61.[5]

■ A rationale similar to that of *Hagan* is applicable in the instant case. Jensen and Fossum, in their individual capacities, were parties to the principal obligation of the promissory note and the mortgage which secured the note. Jensen and Fossum were both the principal debtors and the guarantors. The guaranties signed by Jensen and Fossum are not "guaranties" by definition because the signors did not agree to be responsible for the debt of another. Jensen and Fossum were already jointly and severally liable for the debt under the promissory note and the "guaranty" did not enlarge upon the obligation.

Because Jensen and Fossum are not personally liable as a result of their personal guaranties, it was improper for the Bank to proceed against the guaranty instead of foreclosing the mortgage. The district court therefore erred in dismissing Jensen's and Fossum's motion to dismiss the Bank's complaint without prejudice. From this conclusion, it follows that the district court also erred in granting the Bank's motion for summary judgment. Nothing in this decision, however, deprives the Bank of the right to foreclose on the mortgage and secure a deficiency judgment, if the proper procedure is followed.[6]

■ Jensen and Fossum also raise the issue of whether or not the district court erred in dismissing their counterclaim against the Bank for damages. Jensen and Fossum stated in their counterclaim "[t]hat the Plaintiff, by going after the Defendants individually and jointly has caused great and irreparable damage to their reputation and to their well-being and mental condition." However, in their motion for dismissal of the Bank's complaint without prejudice, and accompanying brief and affidavits, no mention was made of the counterclaim.

The Bank contends that it could not determine the essence of the counterclaim based on the pleadings and therefore asked specific questions of each defendant at his deposition. As a result of the answers given at those depositions, the Bank was under the impression that the counterclaim was an action for malicious prosecution. The Bank argued in its brief to the district court that a claim for malicious prosecution requires that one allege and prove that the action upon which one is suing has terminated and in the defendant's favor. *See Farmers Elevator Company v. David*, 234 N.W.2d 26 (N.D.1975). As Jensen and Fos-

---

forever, all the following described real estate in the County of Williams."

**5.** A debtor may be held personally liable for a deficiency judgment only under §§ 32–19–04 and 32–19–06, N.D.C.C. See footnotes 2 and 3 for the text of these sections.

**6.** An affidavit in the record of an officer of the Bank asserts that:

"3. The property which was originally taken as security for the Promissory Note which underlies this action known as the Williston

Basin Mineral Technology Subdivision is no longer available to secure this Judgment.

"4. The First National Bank held an inferior lien position in that subdivision and in Civil No. _____ a superior mortgage of the Williston Cooperative Credit Union was foreclosed removing the property as security for the Plaintiff."

The affidavit does not mention the date of the judgment of foreclosure.

sum failed to so allege and prove, the Bank made a motion to dismiss the counterclaim for failure to state a cause of action upon which relief could be granted.

Jensen and Fossum did not reply to that motion to dismiss their counterclaim. On September 9, 1988, the district court entered judgment granting the Bank's motion for dismissal of the counterclaim.

On appeal, the brief of Jensen and Fossum indicated that the essence of the counterclaim is an action for breach of good faith. Jensen and Fossum claim that section 1–203 of the Uniform Commercial Code, as adopted in section 41–01–13 of the North Dakota Century Code,[7] imposes an obligation of good faith in the performance or enforcement of a contract. We do not believe this issue was clearly raised before the trial court. Furthermore, we recently said in *Union State Bank v. Woell*, 434 N.W.2d 712, 715 (N.D.1989) [Civil No. 880096, filed January 9, 1989], that "[w]e have not ruled whether a tort action exists in this jurisdiction for breach of the obligation of good faith in a commercial context, [footnote omitted] and decline to do so today, ..." Concluding that the issue was not clearly raised in the trial court, in this case we decline to rule on the issue today. The district court, therefore, properly dismissed the counterclaim against the Bank.

For the reasons stated herein, we reverse the grant of summary judgment, remand with instructions to the district court to grant the motion to dismiss the complaint without prejudice, and affirm the dismissal of the counterclaim. Statutory costs on appeal shall be allowed to the appellants.

LEVINE and MESCHKE, JJ., and VERNON R. PEDERSON, Surrogate Justice, concur.

VERNON R. PEDERSON, Surrogate Justice, sitting in place of GIERKE, J., disqualified.

7. Section 41–01–13, N.D.C.C., provides:
  "*41–01–13. (1–203) Obligation of good faith.* Every contract or duty within this title impos-

VANDE WALLE, Justice, concurring in the result.

I concur in the result reached in the majority opinion and with most of the rationale used to arrive at that result. I write separately only to note that I adhere to my position in *Mandan Sec. Bank v. Heinsohn*, 320 N.W.2d 494, 501 (N.D.1982) (VandeWalle, J., dissenting), i.e., that after having executed a note and mortgage as partners, the individual partners cannot be proceeded against on the basis of their individual guaranties under our antideficiency statutes. Therefore, I believe that not only is *Mandan Sec. Bank v. Heinsohn* distinguishable, I believe it was wrongly decided and should be reversed when an appropriate case involving a partnership is before us.

MESCHKE, J., concurs.

es an obligation of good faith in its performance or enforcement."