FEDERAL DEPOSIT INSURANCE COR-PORATION, Successor in interest to First National Bank of Coalville, Plaintiff and Respondent,

v.

BISMARCK INVESTMENT CORPORA-TION, a Corporation, and R. M. Hart, Defendants and Appellants.

No. 14098.

Supreme Court of Utah.

March 15, 1976.

Dwight L. King, Salt Lake City, for defendants and appellants.

S. Rex Lewis, Howard, Lewis & Petersen, Provo, for plaintiff and respondent.

ELLETT, Justice:

This is an action to enforce a guaranty agreement signed by Bismarck Investment Corporation and R. M. Hart. The case was tried to the court, sitting without a jury, and judgment was entered for plaintiff against R. M. Hart in the sum of $216,666.

Bismarck Investment Corporation filed a petition for an arrangement in bankruptcy under Chapter 11 and as a consequence all proceedings in this case against Bismarck have been stayed.

Mr. Hart contends that the guaranty is a joint affair, and therefore this action cannot go forward against him alone, but must be stayed until the bankruptcy proceedings are terminated in the federal courts. He further contends that inasmuch as there is security in the form of 1,629 shares of

stock in First American Bank and Trust Company, held by plaintiff, that there can be no personal judgment until the security has been exhausted.

The last mentioned contention is without merit for several reasons. In the first place the trial court was not apprised of the existence of the security. In the next place it is not shown that the security is actually in existence or even if it has a value. In the third place the appellant falsely assumes that the law of mortgages on realty should apply to personal securities. Prior to 1965 our statute provided that there could be but one action for the recovery of any right secured by a mortgage upon real or personal property.[1] In 1965 the law was amended to exclude the provision relating to mortgages on personal property. In the fourth place the shares of stock were not mortgaged in this matter —they were pledged to the plaintiff, and a pledge is not the same as a mortgage.[2] Section 70A–9–501 of the Uniform Commercial Code[3] provides for the remedies of a secured person, and says:

> He may reduce his claim to judgment, foreclose or otherwise enforce the security interest by any available judicial procedure.
>
> \*     \*     \*     \*     \*     \*
>
> When a secured party has reduced his claim to judgment the lien of any levy which may be made upon his collateral by virtue of any execution based upon the judgment shall relate back to the date of the perfection of the security interest in such collateral.

The only contention made by the appellant in the trial court was that the obligation was joint, and since the plaintiff could not proceed against the corporate defendant, it likewise could not proceed against him.

The trial court thought the obligation was joint and several and so held as a matter of law. Whether a contract is joint, joint and several, or several, depends upon the construction of the language used and the intention of the parties as manifested by the language used. That language must be followed by the court.[4]

Ordinarily, a promise by two or more in the singular number is prima facie several, while a promise in the plural is prima facie joint.[5]

The language used in the agreement appears to be ambiguous in that the plural verb "agree" is used in several places, e. g., "the undersigned agree"; while the last paragraph has the words, "The undersigned further agrees."

However, whether the guaranty be joint or joint and several does not, in our opinion, make any difference in this case. There is no question but what less than all joint obligors can be sued when some cannot be found or brought within the jurisdiction of the court. This is a proper proceeding, for the ones sued are obligated on the document; and if judgment were taken against all who were jointly obligated, the judgment creditor could get satisfaction from any one of the debtors. The one who was compelled to pay the joint obligation would have his rights to have contribution against his joint obligors, and this would be true whether the judgment was against them or not.

Furthermore, where one obligor sets up a defense which applies only to himself such as infancy, bankruptcy, insanity, etc., a judgment of dismissal in his favor does not discharge the others from their joint obligation.[6]

The bankruptcy proceeding taken by the corporate defendant may take a long time

1. 78–37–1, U.C.A.1953, L.U.1951 Ch. 58, sub. ch. 37, section 1.

2. *Campbell v. Peter*, 108 Utah 565, 162 P.2d 754 (1945).

3. U.C.A.1953, Replacement Vol. 7B.

4. 17A C.J.S. Contracts, § 350.

5. *Lovell v. Commonwealth Thread Co.*, 272 Mass. 138, 172 N.E. 77 (1930).

6. 2 Williston on Contracts 3rd Ed. Sec. 327.

and we are unable to see how Mr. Hart is in any worse position by reason of the fact that the corporate defendant has secured a delay in trial. The matter would have been the same had a judgment been obtained against both defendants and thereafter one had taken out bankruptcy.

■ Mr. Hart also claims that the trial court should have dismissed the action and forced the plaintiff to file it in the federal district court. There is no merit to this contention. The federal statute which created the plaintiff provides that it has power: "Fourth. To sue and be sued, complain and defend, in any court of law or equity, state or federal." [7]

In the trial of this matter Mr. Hart cross-examined the witnesses for the plaintiff, but offered no evidence on his own behalf. We do not think the court erred in refusing to stay the proceedings as to Mr. Hart and the judgment is therefore affirmed. Costs are awarded to the respondent.

HENRIOD, C. J., and CROCKETT, TUCKETT and MAUGHAN, JJ., concur.